## LIABILITY OF DRUG STORE FOR DOW LAW TAX.

Circuit Court of Licking County.

SARAH E. HUFFMAN v. E. T. RUGG, TREASURER.

Decided, March Term, 1902.

*Taxation—Intoxicating Liquor Sold from Drug Store on Physician's Prescriptions, Held to be Fraudulent—Seizure of the Store on Claim for Dow Tax—Petition for Injunction Against Sale of the Property Dismissed—Extent to which a Drug Store Might be Subjected to Payment of Dow Tax.*

Prescriptions calling for beer or other intoxicating liquor can not be accepted as issued in good faith, notwithstanding the good repute of the physician issuing them has not been called in question, where the writings themselves are not produced, and the testimony regarding them is that the so-called patients went to the physician and specified what they wanted, sometimes specifying the number of bottles wanted, whereupon the physician would write a prescription calling for a certain amount of beer or other liquor and in some cases would add the word "refill," but gave no direction as to how the liquor was to be taken; and sales of beer or other intoxicants upon such prescriptions are unlawful, and subject the owner of the store as well as the owner of the real estate to liability for the Dow tax, and injunction will not lie to prevent collection of the tax by distraint.

*S. M. Hunter*, for plaintiff.
*Charles W. Miller* and *J. R. Fitzgibbon*, contra.

VOORHEES, J., (orally); DOUGLASS, J., and DONAHUE, J., concur.

This action comes into this court on appeal. The object and purpose of the suit is to restrain the defendant from collecting by distress certain taxes that had been levied under what is known as the Dow law. Without taking time to read the petition, I will read the prayer, which states the object of the suit to be:

"That the defendant be restrained from selling or otherwise depriving plaintiff of her property and business, and from ex-

cluding her from the possession of the drug store and the property and fixtures therein contained, and from excluding and preventing her from entering and taking possession of and operating her said business, and commanding said defendant to deliver to the plaintiff her said property, and, upon the final hearing, that the injunction be made perpetual.''

The amended answer takes issue with the plaintiff's petition, and there are two or three questions that are presented by the issues which will be necessary for us to determine.

The testimony shows that this property that has been seized by the officers who were attempting to collect this tax was a drug store, situated in the village of Johnstown, this county. It is claimed by the plaintiff that she is the owner of the property, and that there has been no action on her part, during the time in which this levy of taxes was made, subjecting her to any liability under the law for the Dow tax.

It is conceded that the assessment that was made was not against the plaintiff. The assessment is against a man by the name of Friddle; and the contention on the part of the defendant is that this business, that was carried on, was in the property of the plaintiff, and that Friddle was really the owner of the property; that the attempted sale that was made was a sham, and was done for the purpose of avoiding the tax, and that really he was the owner of the business, carried on the business, and was the owner of the property, which it is sought to distrain for the payment of this tax.

It seems from the testimony that this property at one time, in 1897, beyond peradventure belonged to the plaintiff; that she was the owner of this drug store; that in 1897 she sold it to Friddle, who gave his notes for a part of the consideration at least, and paid part in cash; that he took charge of the business and carried it on until in May, 1898, at which time, by an arrangement between the plaintiff and Friddle, the plaintiff again became the owner of the property and the notes that had been given by Friddle in 1897 for a part of the consideration were surrendered, and the balance was paid by the plaintiff to Friddle by a check, which has been produced in evidence.

So, one of the issues that has been tried and submitted to the court is whether this sale was a *bona fide* sale, or whether it was a mere sham between these parties for the purpose of avoiding the tax that was sought to be levied and collected from this property.

The plaintiff, in her petition, assumes, from her allegations, that she was the owner of the property; that she was carrying on the business, and that there were no intoxicating liquors sold on the premises by herself or anyone else for her, except on prescriptions duly issued by reputable physicians, as provided for under the statute. That will be one of the questions that we will have to consider.

But, first, as to the business that was carried on in this property, supposing the plaintiff to be the owner of it. It was assumed to be a drug store, with all the necessary appliances for the purpose of carrying on a drug store; and, from the testimony, it is very clear that, in addition to that, there were sold, in connection with the business, or in the same business, quantities of beer differing in amount according to the desires and wishes of the purchasers; and the contention on the part of the plaintiff is that while she was carrying on this business after May, 1898, there were no sales of intoxicating liquors made except upon the prescription of reputable physicians.

The important question then is: whether this sale was a valid sale or not; or whether it was a mere sham. An important question is whether these intoxicating liquors—the beer that, from the testimony, unquestionably was sold there—was sold in accordance with the law, viz: that it was only sold upon prescription issued by reputable physicians, so as to be exempt from liability under the statute.

The testimony seems to be (and that will be the finding of the court) that there were prescriptions or writings furnished, by some of the parties at least who got beer there, by physicians that we have no reason to doubt are reputable physicians. But, from the testimony and facts that are produced here, can the court find that these prescriptions were such as is contemplated by the statute, and that they were issued in good faith to the

parties who received them and obtained beer or intoxicating liquors upon them? The testimony indicates that, in many cases at least, the parties who wanted beer would go to a physician and say that they wanted beer, and the physician would write a paper directing that such and such person should receive beer, designating so many bottles of beer upon that prescription. The prescriptions are not produced. They are not offered in evidence, and the court has not an opportunity of inspecting them to see whether they would comply with what the law certainly contemplates a prescription should be. But these significant facts do appear: that the parties would go to the physician and say to the physician that he wanted so much beer. He specified what he wanted, and in some cases would specify the quantity that he wanted; and upon such a statement as that the physician would give him his pretended prescription, without indicating or prescribing how it should be used. That was left to the option and judgment and wishes of the alleged patient. And after the party got his prescription, he would go and get his beer, the quantity that he wanted, and take it according to his own desires and wishes.

This is the way, in many instances, from the testimony, the sales that were made in this drug store upon pretended prescriptions, or were made in connection with this drug store or business. Is that such a selling on prescription as is contemplated by the law? It is conceded that this beer was sold. It is conceded that it was sold in connection with this business or in this place, and that the plaintiff says that she was the owner of it, and had the management and control of it, but she seeks, and the only ground upon which she seeks to exempt her property that would be subject, or might be, under the law, whether she was the real keeper or not, is that it was sold upon a prescription made by a reputable physician.

But, we are led to the conclusion, from this state of facts, that these prescriptions are not such as the law contemplates; and we have an authority which we are inclined to give faith and credit to, and I believe the decision was by the author of the law—Judge Dow; I think he is the one who drafted this law,

and he ought to know or have some idea as to what was intended by it when he drafted the law.  He takes up the subject as to when a prescription is issued in compliance with it:

"The plaintiff having alleged that said assessment was illegallly levied, the affirmative is upon him to show this fact. "The evidence shows that the plaintiff and his clerks between the dates mentioned, sold intoxicating liquors by the bottle to be drank in said drug store, upon his own written prescription so-called and upon the prescription of another physician; that often these prescriptions were marked 're-fill' upon which additional sales were made as often as called for, in some instances ten or twenty times."   8 Ohio Decisions, 116.

The druggist in this case was a physician, and the sales were frequently made upon his prescription to his alleged patient, but not entirely so, as sometimes they were issued upon the prescription of another physician.

"That these prescriptions" says the report, "were made out by plaintiff and by him filled for every imaginary ailment the customer could suggest."

And, as we go along, we will try and make the application of the facts in the case that we have in hand with the conditions and facts that were disclosed in this case.  From the testimony, many of these alleged patients would go to the physician and tell him what he wanted; that he wanted beer; upon his statement, the prescription would be issued for so many bottles of beer, without any direction as to how, or when, or in what quantities he should take it, or use it.

"The evidence shows a studied effort upon the part of the plaintiff to evade the provisions of the statute, and he now comes into a court of equity invoking its aid in assisting him in escaping the payment of the tax.

"Suppose the drug store was a saloon, and the proprietor sought to evade his liability in this way, could he successfully do it?   A drug store is entitled to no greater privileges.

"The plaintiff testified that all the sales made by him were upon written prescriptions, issued as before said and which were now in his possession, but failed to produce said prescriptions or any of them."

That is the situation here.

"The rule that the best evidence must be produced is applicable in this case as in any other.

"He having affirmed that the sales were made only upon written prescriptions and defendant having denied this averment, the plaintiff, when within his power, must produce the same.

"It may be that if the writing had been produced, the court upon inspection would have found that it was not a prescription; it is not for the witness to state what the paper was, but for the court to determine from its language.

"Suppose the paper had read as follows:

"July 4, 1896. 'Let John Jones have 8 oz. spirits frumenti—Refill.' (Signed) : 'Jas. A. Hubbell, M. D.' .

"This is not a prescription under Section 8 of the Dow law.

"It is not addressed to any one—it does not specify the manner of use—it leaves it all to the judgment of the patient as to the quantity he shall drink at any one time.

"The Century Dictionary defines a prescription to mean 'a statement, usually written, of the medicine or remedies to be used by a patient, and the manner of using the same.' "

Now, as to these prescriptions in this case: They were not produced, but evidence was allowed to come to the court for the purpose of showing what these prescriptions were; and, giving them the most liberal construction, they do not meet the requirements, as we understand the law, when it is to be tested as to whether or not it was a prescription issued in good faith by a reputable physician. The law means something when it uses the term "issued in good faith."

As we said before, we do not know the reputation of these physicians; but, when we have the facts before us, of the manner in which these prescriptions were filled, and the way these parties sought the physicians for the purpose of getting them, and the indefinite manner in which they were given and to be used, they certainly do not come within the purview of the law which defines what is a prescription. There was no direction as to its use.

Therefore, from the testimony, we must find as a fact that these sales of beer, after the plaintiff became the owner of this

property—granting that her sale and purchase was an honest and fair one—the sales of intoxicating liquors, which she does not deny, were unlawful. Her excuse is, and the only excuse she offers here, that sales of that character were upon prescriptions, in good faith, by reputable physicians. But the sales then were unlawful, and it makes no difference who was the operator of the business; the object of the law is to reach the business itself; and it is not to punish the person, but it is for the purpose of regulating and controlling the traffic in intoxicating liquors; that was the reason and object of the passage of the law, and the business itself is what is to respond, if it is carried on in a place, and it makes no difference by whom.

Then, in this case, we would hold as a matter of fact that, after this alleged sale in May, 1898, the business of selling intoxicating liquors carried on in this drug store, the real estate of which belonged to the plaintiff beyond peradventure, was in violation of the law, for the reason that it was, in fact, not sold upon prescriptions issued in good faith by a reputable physician.

Then, what is the effect? The business is what is to respond; and if the business was carried on in the plaintiff's property, carried on for her as she conceded, then this property must answer for the tax if it is not paid. It would then become a lien, by operation of law, upon the real estate. It would be if it was carried on by Friddle, and the plaintiff had no connection whatever with it—if it was not her business; but, if it was carried on by Friddle in her property, the real estate would be liable for it; it would be a lien upon the real estate; and the officers who were seeking to collect the tax would have a lien upon the real estate, but they would have in addition to that a right to levy by distress if the property is claimed by another than the one who is running the business upon certain kinds of property; it would be, in the language of the statute, upon the bar, and the bar fixtures and all other property incident and necessary to carrying on the business.

Now, we will grant for a moment that that would not reach this drug property (and that is the strongest contention that counsel for the plaintiff make here); that while that which was

essential and necessary to carry on this business could be reached, in an effort to reach after personal property, and not to enforce a lien upon the real estate, but reaching only after personal property, such property must of necessity be limited by the statute itself to bar fixtures and the property incident and necessary to carry on the business of trafficking in intoxicating liquors. And, speaking for myself upon this proposition, and the court really do not differ upon it, if that was all that was in the case, the drugs and things that were in a drug store carried on in good faith, could not, perhaps, be taken under the section of the statute authorizing distress by the officers; and the seizure would be limited to that which appertained to the bar or the saloon part of the drug store, if we may so designate it.

But, there is another principle that applies. There is no question in this case as to the real estate, but the plaintiff seeks to invoke the aid of a court of equity to restrain the officers from taking this property—the drug store and fixtures and all the things that are incident to that business; and her contention is that they are seeking to collect the tax against her when she was not in the business; that they are seeking to take her property for the payment of a liability of Friddle, and, therefore, she has a right to come into a court of equity and enjoin the collection of that tax.

Now, it is true that where there has been an illegal levy of taxes, or an illegal assessment of taxes, the statute does afford the party against whom it is assessed the right to come into a court of equity and enjoin the officers from collecting the tax. This is an innovation upon the common law. Without the aid of the statute that could not be done, because a party would have to resort to his legal remedy. But by the statute, Section 5848, I believe it is, there has been this innovation made upon the common law, and it is upon the strength of that statute, doubtless, that this proceeding was brought, and the contention is made in behalf of the plaintiff that this is a proper proceeding.

Section 5848 of the Revised Statutes reads as follows:

"Courts of common pleas and superior courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either."

Our construction of this section of the statute is that it applies where the illegal levy is made, or the assessment made is against the party that is seeking the aid of a court of equity. In other words, if this was Friddle's property, and they were seeking to restrain the officers from collecting the tax levied against him, and the proof shows that the levy was against him and in his name, if it was illegal he could enjoin under this statute, because it expressly says so; but, does it give a third party that right? Does the plaintiff in this case stand as though it had been levied against her and illegally levied? We think not, and for this reason: If she is the owner of the property, and they seek to enforce a claim against the property—not against her, but against her property—why then she could not come into a court of equity for the reason that she would have an adequate remedy at law. It would be analogous to this: Suppose that an attachment issues against one party, and that attachment is levied upon the property of a third party. Now, would it be contended that the third party who was a party to the other suit, could come into a court of equity and ask to have the party enjoined from selling and appropriating his property? His remedy at law would be in replevin, or he could invoke the remedy in the trial of the right of property which is given by statute—a definite and adequate remedy at law. In this case, if the property is Mrs. Huffman's, and the county or state is seeking to take her property to answer the liabilities of Friddle, there is no reason why she would not have her adequate remedy at law, either by replevin, or the trial of the right of property. As I say, the question as to real estate is not here involved, but it is the personal property—the drug store—which she claims had no connection whatever with this other business; and, if so, she would have her adequate remedy at law.

Therefore, without taking more time, we think that the plaintiff has no standing in a court of equity. Conceding that she is the owner of the property—and that is what she says—under the law, and according to her claim in her petition, and according to the proof as we find it, the sales that she was permitting to be made there were clearly in violation of the law, because intoxicating liquors were sold in violation of the statute. She then

would have no standing in a court of equity.  If she has a remedy, she must seek it at law.

And, for these reasons, we think that the petition in this case should be dismissed.

Judge Hunter:  Does Your Honor find, as a matter of fact, that the transfer was made to her?

Judge Voorhees:  Why, yes, I think that we find that.  (Judge Voorhees confers with Judge Douglass and Judge Donahue.)

Judge Voorhees:  In place of finding specifically that there was an honest sale and transfer of the property, the court is of the opinion that it is a fraud—an attempted fraud on her part and that of Friddle to avoid the tax, and, therefore, she could not come into a court of equity, and that would be the finding upon that matter.

Judge Hunter:  Well, on that matter, I would like to file a motion for a new trial—

Judge Donahue:  I don't think you understand it, judge— we find that her attempt to evade the law and not paying the tax was a fraudulent transaction on her part that bars her from any relief in a court of equity, or to any finding of fact on these questions.

Judge Hunter:  But still, I want to know whether the court finds, as a matter of fact, that that transfer was made to her, and that she was the owner of the property.

Judge Donahue:  You can file a motion for a new trial.

Judge Hunter:  Yes. sir, and I desire to argue it.

Judge Donahue:  We find the testimony shows her steeped in fraud in an attempt to evade a statute of this state, and that she is not entitled to any finding further than that fact, and goes out of the court of equity.  That is the finding that the court will make, if you want a special finding.

Judge Hunter:  On that matter, I desire to be heard upon a motion for a new trial when the court has time to hear me.  I also ask the court to remit the penalty.

Judge Voorhees:  We will consider that.

Judge Donahue:  When do you wish to argue the motion for a new trial, Judge Hunter?

Judge Hunter:   I want a finding, because I can then take the question whether you can distrain; if you hold, as a matter of law, that that transfer is good, and then, notwithstanding there are no taxes charged against her, yet you can distrain her property—that is all the point I wish to raise in the case.

Judge Donahue:   But, there are two points upon which we dismiss the case.   The first is that that there being no tax assessed against her, but her property sought to be taken, her complete remedy is at law.   A person who has a tax charged against him is entitled to go into a court of equity to have that stricken off.   The second point is, that your client has attempted a fraud upon the statutes of the state—if it is her business, then she has attempted a fraud upon the state through these fraudulent prescriptions, and has no standing in a court of equity, and we make no other finding but those two.

Judge Hunter:   And I protest against that finding.   I find myself absolutely unable to concur with the court upon that statement.   I simply stand upon my legal rights.   I am satisfied that the transfer was in perfect good faith, and the reason was because Mr. Friddle could not pay, and the property had to be taken back.

Mr. Miller:   There is no testimony to that effect.

Judge Hunter:   Mr. Friddle himself testified to it, and there isn't a word to the contrary from anybody.   If the court finds that this transfer was made, that she owned the property at this time, and that the tax was not charged against her, but charged against Jacob Friddle, that raises a point of law, that you can not take any man's property from him by distraint unless you charge him with it.   That is the point I make, and the other point that is raised by the court, that she had not the right to bring this action for an injunction—you hold that as a matter of law—I disagree with the court upon that point; and those are the only two points that I wish to raise; I can raise them without any further trouble if the court finds, as a matter of fact, that that transfer was made.

Judge Donahue:   After finding that the party comes into court with unclean hands, the court is not supposed to make any further finding, and if our finding is wrong upon that—

Judge Hunter: The statute makes no discrimination.

Judge Donahue: We do.

Judge Hunter: In a suit to enjoin taxes, the statute does not say anything about clean hands—well, that argument is over, you can not turn a person of bad character out of court for that reason.

Judge Donahue: Yes, you can; out of a court of equity. If they have attempted a fraud upon the statutes of the state, they haven't any right to come into a court of equity. We always want counsel to have the fullest opportunity to review a case, and we think we will go farther for you and find that that was a *bona fide* transfer. We will give you that finding.

Judge Hunter: You find those three facts, then?

Judge Donahue: Yes, sir.

Judge Hunter: I am perfectly willing that you find that the law was violated, and that the transfer was made, and that the tax was not charged against her, and you hold that she was not entitled to this remedy of injunction.

That is all I will ask of Your Honor.

Judge Voorhees: We remit the penalty and dismiss the petition.